UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARGARET LISTER, as personal
representative of the Estate of CLINT
JOSHUA GREY, deceased; and
KIMBERLY GREY, individually,

Plaintiffs,

-vs-                                                                        Case No.:

PRISON HEALTH SERVICES, INC.,
a foreign corporation;

Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs MARGARET LISTER, as personal representative of the Estate of CLINT JOSHUA GREY, deceased; and KIMBERLY GREY, individually sue Defendant PRISON HEALTH SERVICES, INC. ("Prison Health") and allege:

### JURISDICTION AND VENUE

1. Plaintiff KIMBERLY GREY is a citizen of the State of Florida. Plaintiff MARGARET LISTER is the personal representative of the Estate of CLINT JOSHUA GREY, deceased. The Estate is being administered in Hillsborough County, Florida. Defendant Prison Health is a citizen of a State other than the State of Florida. The matter in controversy exceeds, exclusive of

interest and costs, the sum of seventy-five thousand dollars.

2. This cause of action arose in the Middle District of Florida; therefore, venue is proper under 28 U.S.C. §1391(b).

### *Introduction*

3. KIMBERLY GREY was taken into custody and incarcerated in the Hillsborough County Jail on February 20, 2004. At that time and place, KIMBERLY GREY made clear to all medical personnel with whom she came in contact that she was pregnant.

4. On February 24, 2004, KIMBERLY GREY was evaluated at Tampa General Hospital for a potential miscarriage and was treated for cold and flu like symptoms. Hospital personnel determined that KIMBERLY GREY had not miscarried, the baby was still viable, and returned KIMBERLY GREY to jail, with instructions to return if she experienced more than 5 to 6 contractions an hour or if she were to rupture her membranes. Discharge instructions included the cautionary statement that a rupture of membranes might be a sudden gush of fluid or a constant leakage. In determining the difference between amniotic fluid and urine, the statement cautioned "If you are not sure, come to the hospital to be examined."

5. KIMBERLY GREY continued to leak amniotic fluid after her release

from Tampa General Hospital. Some time after 4:00 p.m. on March 4, 2004, KIMBERLY GREY went into labor. Prison Health Employees at the Hillsborough County Jail noted that she had a fever of 101 degrees Fahrenheit, displayed a greenish vaginal discharge, that she complained of back pain, and that they observed a mucous plug in the toilet.

6. Prison Health Employees at the jail knew or should have known that KIMBERLY GREY's pregnancy was a high risk pregnancy and that a birth at that point would be premature. Despite such knowledge, KIMBERLY GREY was not transported to a hospital at that time. Nor was she seen by an obstetrician or obstetrical nurse practitioner.

7. Later that evening, at approximately 9:00 p.m., laboratory tests revealed that KIMBERLY GREY had a white blood cell count in excess of 25,000, strongly suggesting a serious infection, and a red blood cell count of 3.9, suggesting blood loss. These laboratory results were communicated to a nurse employee of Prison Health, named "Devine" before 10:00 p.m. Devine's orders in response to these lab results were to administer Tylenol and to "keep an eye on [KIMBERLY GREY]."

8. KIMBERLY GREY continued to experience back pain and discomfort that evening and into the early morning of March 5, 2004. No

electronic fetal heart monitoring was initiated, and no monitor was placed to assess the presence or intensity of contractions.

9. Over the course of several hours from the evening of March 4, 2004, until the early morning of March 5, 2004, KIMBERLY GREY's contractions and complaints were relayed by Prison Health Nurses to Divine. Neither Divine nor any other obstetrical nurse ever physically appeared and personally assessed GREY at any time. The Prison Health Nurses never performed a pelvic exam on KIMBERLY GREY while she was leaking fluid at the Hillsborough County Jail. In fact, nurses attending KIMBERLY GREY were unable to perform a pelvic exam because of a lack of training and experience.

10. Also over the course of the evening and into the early morning, KIMBERLY GREY, who had experienced active labor at least four other times, informed Prison Health nurses that she was in labor. The nurses told her that she was not. KIMBERLY GREY'S complaints of pain and her attendant sobbing were dismissed as "mood swings."

11. At approximately 2:45 a.m. on March 5, 2004, KIMBERLY GREY gave birth to CLINT JOSHUA GREY while over a jail toilet. CLINT JOSHUA GREY was born with a nuchal chord and required immediate medical intervention.

12. At no time from the onset of labor until delivery of the child had a

pelvic examination been done.

13. Prison Health nurses and medical staff were untrained and unfamiliar with resuscitation and care of newborn infants, and CLINT JOSHUA GREY did not receive appropriate care and support following his birth.

14. Over the course of these events, Prison Health nurses refused to call an ambulance. Finally, a detention deputy, Holly Deluca, called 911. After doing so, she was verbally rebuked by her supervisor.

15. Emergency Medical Services personnel arrived shortly after 3:00 a.m. on March 5, 2004, and transported CLINT JOSHUA GREY and his mother to Tampa General Hospital. CLINT JOSHUA GREY was pronounced dead on arrival.

### COUNT I
### *(Medical Negligence/ Respondeat Superior)*

16. Plaintiffs reallege and reaver paragraphs 1 through 15.

17. The above acts or omissions on the part of the employees and agents of Prison Health constitute breaches of the prevailing standard of care, skill and treatment which is recognized as acceptable and appropriate by reasonably prudent similar health care providers in the community.

18. The above acts or omissions by Prison Health employees or agents

occurred within the course and scope of such agency or employment. Pursuant to the doctrine of *respondeat superior* Defendant Prison Health is liable for the negligent acts or omissions of its employees and agents.

19. As a direct and proximate result of the above wrongful acts, CLINT JOSHUA GREY died and KIMBERLY GREY suffered bodily injury and resulting pain and suffering, medical and nursing care and expense, mental anguish, loss of capacity for the enjoyment of life, disability, and aggravation of a previously existing condition. The damages are continuing and she will suffer them in the future, and they flow both from the negligent treatment she received and the death of her son.

20. The conduct causing KIMBERLY GREY'S injuries and CLINT JOSHUA GREY'S death was so gross and flagrant as to show a reckless disregard of human life or of the safety of persons exposed to the effects of such conduct; or the conduct showed such an entire lack of care that there must have been conscious indifference to the consequences; or the conduct showed such an entire lack of care that there must have been wanton or reckless disregard for the safety of the public; or the conduct showed such reckless indifference to the rights of others as to be equivalent to an intentional violation of those rights.

21. Prison Health is, and before the events described above was,

personally aware of numerous problems concerning grossly substandard medical care provided by Prison Health in Hillsborough County and in neighboring Pinellas and Polk Counties. Prison Health was also aware of numerous problems with its delivery of health care services to pregnant inmates at facilities across the country, including fetal and newborn deaths.

22. Despite the gross and repeated malpractice committed by PHS and its employees, Prison Health had not trained its employees, charged with caring for pregnant inmates and detainees, on appropriate monitoring of fetal heart tones; the significance of vaginal Ph; the use of a UA dipstick, and other diagnostic tests to be directed by the Medical Director or the patient's physician. Prison Health did not have in place any means for electronic fetal monitoring despite the fact that it has treated more than 500 pregnant inmates in Hillsborough County since 2002.

23. Despite its responsibility for providing care to pregnant inmates, Prison Health has failed to appropriately train its employees on the signs and symptoms of active labor; the normal parameters for fetal heart tones and their relation to gestational age of the fetus; resuscitation and care of the neonate; and preparation of the mother and/or her baby for transport to a birthing facility or hospital.

24. Despite its knowledge of systemic problems with its delivery of

correctional medical services, Prison Health continues to do business as usual, as inmate after inmate suffers injury or death in facilities at which Prison Health is the medical provider.

WHEREFORE Plaintiffs demand judgment against Prison Health for punitive and compensatory damages, costs, and such other and further relief as this court may deem proper.

## COUNT II
### *Intentional Infliction of Emotional Distress*

25. Plaintiffs reallege and reaver paragraphs 1 through 15.

26. Prison Health and its agents, servants, and employees knowingly and recklessly prevented KIMBERLY GREY from obtaining desperately needed medical attention, instead allowing her to enter labor and deliver an infant boy in the setting of a jail toilet. While intentionally denying care, Prison Health and its agents, servants and employees knew that their actions and inactions were causing KIMBERLY GREY severe physical and emotional distress.

27. Prison Health knew that its staff and facilities at the Hillsborough County Jail was not equipped to provide care to inmates in labor or in advanced stages of pregnancy. Nevertheless, for financial reasons, Prison Health refused to transfer such patients or expend funds to purchase equipment necessary to provide

appropriate care.

28.  As a result of these wrongful and intentional acts, CLINT JOSHUA GREY died and KIMBERLY GREY suffered severe physical and emotional distress, bodily injury and resulting pain and suffering, medical and nursing care and expense, mental anguish, loss of capacity for the enjoyment of life, disability, and aggravation of a previously existing condition. The damages are continuing and she will suffer them in the future.

29.  The conduct causing KIMBERLY GREY'S injuries and CLINT JOSHUA GREY'S death was so gross and flagrant as to show a reckless disregard of human life or of the safety of persons exposed to the effects of such conduct; or the conduct showed such an entire lack of care that there must have been conscious indifference to the consequences; or the conduct showed such an entire lack of care that there must have been wanton or reckless disregard for the safety of the public; or the conduct showed such reckless indifference to the rights of others as to be equivalent to an intentional violation of those rights.

WHEREFORE Plaintiffs demand judgment against Prison Health for punitive and compensatory damages, costs, and such other and further relief as this court may deem proper.

DATED this 7th day of December, 2005.

                                              **TRENTALANGE & KELLEY, P.A.**

                                              MICHAEL J. TRENTALANGE, ESQ.
                                              Florida Bar No.: 0850942
                                              One Harbour Place, Suite 250
                                              777 S. Harbour Island Boulevard
                                              Tampa, Florida 33602
                                              (813) 226-1080   Fax:  (813) 226-1081
                                              **Attorneys for Plaintiffs**